UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------
WILWOOD PETERS and SARITA SMITH

                  Plaintiffs,

        - against -

CITY OF NEW YORK, CITY NEW YORK
POLICE DEPARTMENT, CITY OF NEW YORK
POLICE LIEUTENANT SEAN O'KEEFE, CITY
OF NEW YORK POLICE SERGEANT ROBERT
MALONEY, CITY OF NEW YORK POLICE
OFFICER WILLIAM COMACHO, CITY OF NEW
YORK POLICE OFFICER JOHN DOE, CITY
OF NEW YORK POLICE OFFICER JANE DOE,
Individually and in Their Official
Capacities as Police Officers of the
City of New York,

                Defendants
--------------------------------

**CV 14 - 01361**

**14 CV**

**COMPLAINT**

**JURY TRIAL DEMANDED**

REYES, M.J

    The plaintiffs, WILWOOD PETERS and SARITA SMITH, by their attorney, VALERIE A. HAWKINS, ESQ., as and for their complaint against the defendants allege as follows:

### I.

### PRELIMINARY STATEMENT

    1.   This is an action for declaratory relief, injunctive relief, compensatory damages, and punitive damages to redress the unreasonable and unwarranted deprivation of the plaintiffs' federal and state constitutional, statutory, and common law rights by the defendants.

    2.   The plaintiff files this complaint pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States of America (hereinafter U.S. Const. Amends. 4 and 14 respectively),

42 U.S.C. § 1983 (hereinafter § 1983), United States common law, Article 1, Section 12 of the New York State Constitution, and New York State common law.

## II.

### JURISDICTION and VENUE

3.    The jurisdiction of this Court, as to the federal claims invoked by the plaintiffs herein, is pursuant to 28 U.S.C. §§ 1331, 1343, and 1983.  The jurisdiction of this court, as to the New York State claims invoked, is pursuant to 28 U.S.C. § 1367.

4.    Venue for this action properly lies in this Court, pursuant to 28 U.S.C. § 1391, as the unlawful acts and omissions complained of herein occurred within the Eastern District of the State of New York.

## III.

### PARTIES

5.    The plaintiff, Wilwood Peters (hereinafter Peters), was born in Guyana, South America and is a permanent resident of the United States.  The plaintiff, Sarita Smith (hereinafter Smith), is a United States citizen.   Both Peters and Smith are longtime residents of the County of Kings, City and State of New York.

6.    The defendant City of New York, upon information and belief, at all times relevant herein, was a municipal corporation organized and existing under the laws of the State of New York and its principal place of business is in the County, City, and State

-2-

of New York.

7. The defendant City of New York Police Department (hereinafter NYPD), upon information and belief, at all times relevant herein, was a subdivision and agent of the defendant City, organized and existing under the laws of the defendant City and its principal place of business is in the County, City, and State of New York.

8. The defendant Sean O'Keefe (hereinafter O'Keefe), upon information and belief, at all times relevant herein, was employed by and acted as an agent and servant of the defendants City of New York and NYPD. Upon further information and belief, the said defendant was a lieutenant and his principal place of business of was in the County, City, and State of New York.

9. The defendant Robert Maloney (hereinafter Maloney), upon information and belief, at all times relevant herein, was employed by and acted as an agent and servant of the defendants City of New York and NYPD. Upon further information and belief, the said defendant was a sergeant and his principal place of business was in the County, City, and State of New York.

10. The defendant William Camacho (hereinafter Camacho), upon information and belief, at all times relevant herein, was employed by and acted as an agent and servant of the defendants City of New York and NYPD. Upon further information and belief, the said defendant was a police officer and his principal place of business

of was in the County, City, and State of New York.

11.   The   defendant   John   Doe   (hereinafter   John),   upon information and belief, at all times relevant herein, was employed by and acted as an agent and servant of the defendants City of New York and NYPD.   Upon further information and belief, the said defendant was a police officer and his principal place of business of was in the County, City, and State of New York.

12.   The   defendant   Jane   Doe   (hereinafter   Jane),   upon information and belief, at all times relevant herein, was employed by and acted as an agent and servant of the defendants City of New York and NYPD.   Upon further information and belief, the said defendant was a police officer and her principal place of business of was in the County, City, and State of New York.

### IV.

### STATEMENT OF FACTS

13.   For   several   years   prior   to   the   acts   and   omissions complained of herein, Peters and Smith resided together in an apartment building located at 1018 Park Place, County of Kings, City and State of New York.

14.   The apartment building is four story walk up with four apartments on each floor.   Peters and Smith resided on the second floor of the said building.

15.   In 2011, Peters was employed as a construction worker and laborer in the State of Maryland.   He worked in Maryland from

Monday to Friday and he visited with Smith in their said apartment as frequently as possible.

16.   Peters was at his said apartment the week of May 1, 2011. He had taken time off from his work in Maryland to celebrate his 41st birthday with Smith.

17.   On or about May 5, 2011, at approximately 4:00 p.m., Peters left his apartment to check his mailbox located in the first floor lobby area of the building.  Peters found that he had no mail and he sought to return to his apartment.

18.   Peters ascended the open staircase located in the center of the lobby of the building and walked toward his apartment.

19.   When Peters arrived at his apartment, he opened the entrance door, entered his apartment, and attempted to close the said entrance door.

20.   Peters was not able to close the door because, unbeknownst to him, the defendant Maloney followed Peters to his apartment.  Maloney placed his right shoulder against the exterior portion of the entrance door and pushed the door inward and into Peters' body, thereby preventing Peters from closing the door.

21.   Maloney was immediately joined by the defendants Camacho, O'Keefe, and John.  The defendants drew their guns, aimed them at Peters, and attempted to force their way into the apartment.

22.   Maloney, who was in plain clothes, told Peters to get on the "f-----g ground."   Peters responded that he lived in the

-5-

apartment and he pressed his back against the interior portion of the door and tried to keep the defendant officers out of his apartment.

23. None of the Defendants offered any explanation for their actions.

24. Smith, who was in the kitchen of the apartment preparing a meal, heard the commotion and hurried toward Peters. She was alarmed and frightened when she saw the defendants' guns aimed at Peters' chest. Smith screamed at Peters to let the door go, they have guns on you. Peters moved away from the door into the living room area of his apartment which was just beyond the entrance door.

25. The defendants burst into the apartment with their guns still drawn. Maloney aimed his gun at Smith and ordered her to stay where she was. Smith protested that there was nothing in her home.

26. The defendants violently struck Peters several times, knocked him to the floor, and placed him on his stomach. One of the defendants placed his knee on Peters' back. Another placed his foot on the back of Peters' neck. The defendants stated "Yall Jamaicans think yall is tough guys." The defendants pulled out Peters' dreadlocked hair and continued to punch him. The defendants placed Peter's hands behind his back and handcuffed him.

27. Smith, who had initially followed Maloney's order to stay where she was, heard Peters screaming and entered her living room

-6-

to see what was happening. Smith observed Comacho on top of Peters and some of Peters dreadlocks separated from his scalp and scattered on her livingroom floor.

28. Maloney aimed his gun at Smith again. Smith protested that there were no drugs in her home and she asked the defendant why they forced themselves into her home. The defendants did not offer any explanation.

29. In the living room of Peters and Smith's apartment was a coffee table. On the coffee table lay a set of keys, a small can of mace, and a minuscule amount of marijuana, all of which belonged to the plaintiffs' neighbor. The defendants picked up these items and stated, "We got another charge."

30. The Defendants yanked Peters from the floor, placed the said items in Peters' front pants pocket, and removed Peters from his apartment. The Defendants paraded Peters in front of his neighbors and transported him to the NYPD's 77th precinct where he was in custody for more than twenty-four (24) hours.

31. While on the floor of his apartment, while being transported to the precinct, and all the while that he was in custody, Peters repeatedly told the Defendants that he had an injury to his hand and that he was in substantial pain and anguish.

32. Peters wept and wailed while in the custody of the defendants. His hand swelled and he repeatedly requested medical attention, to no avail. Camacho told Peters that when he is sent

-7-

back to Jamaica, he could go to the hospital. The said defendant further stated and that he was "tired of arresting these monkeys."

33. The defendants refused to permit Smith to see Peters while he was in custody.

34. The defendants commenced a baseless criminal proceeding in the Kings County Criminal Court, under docket number 2011KN035548, that charged Peters with possession of marijuana and resisting arrest. Peters was forced to retain an attorney and to attend numerous, inconvenient, unproductive, wasteful, and time-consuming court proceedings that, among other things, caused him to lose time and income from his work in Maryland.

35. After several false starts, a hearing was held in the said criminal court on October 19, 2012 and November 13, 2012. As a result of the hearing, the charges were dismissed on April 1, 2013. The court ruled that "the police lacked probable cause for the arrest of the Defendant, making the entry into the Defendant's apartment, and his subsequent arrest therein, illegal. . . . Without probable cause for an arrest, the police then had absolutely no authority to chase the Defendant, nor to enter his apartment." The Court cited Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371, 63 L Ed 2d 639 (1980) and Welsh v. Wisconsin, 466 U.S. 740, 104 S. Ct. 2091, 80 L Ed 2d 732 (1984).

36. The said dismissal terminated the criminal action in favor of Peters.

**V.**

**STATEMENT OF FEDERAL CLAIMS FOR RELIEF**

37.   Peters and Smith repeat and reallege each of the allegations set forth in paragraphs 1 through 36 this complaint as if the same were fully set forth herein.

**A.   The Defendants Unlawfully Pursued Peters**

38.   The defendants' conduct in pursing Peters to his apartment as aforesaid constitutes the violation of Peters' rights to be secure in his person pursuant to U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

**B.   The Defendants Unlawfully Entered Peters and Smith's Home**

39.   The defendants' conduct in entering Peters and Smith's home as aforesaid constitutes the violation of Peters and Smith's rights to be secure in their home pursuant to U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

**C.   The Defendants Unlawfully Aimed their Guns at Peters and Smith**

40.   The defendants' conduct in aiming their guns at Peters and Smith as aforesaid constitutes the violation of Peters and Smith's rights to be secure in their persons pursuant to U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

**D.   The Defendants Unlawfully Battered Peters**

41.   The defendants' conduct in violently striking Peters as

aforesaid constitutes the violation of Peters' rights to be secure in his person pursuant to U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

**E.   The Defendants Unlawfully Searched Peters and Smith's Home**

42.   The defendants' conduct in touching and moving objects in Peters and Smith's home as aforesaid constitutes the violation of Peters and Smith's rights to be free from unreasonable searches pursuant to U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

**F.   The Defendants Unlawfully Removed Peters from His Home**

43.   The defendants' conduct in removing Peters from his home as aforesaid constitutes the violation of Peters' rights to be free from unreasonable seizures pursuant to U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

**G.   The Defendants Unlawfully Strip-Searched Peters**

44.   The defendants' conduct in subjecting Peters to a strip-search as aforesaid constitutes the violation of Peters' rights to be free from unreasonable searches pursuant to U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

**H.   The Defendants Unlawfully Failed to Provide Peters With Medical Attention**

45.   The defendants' conduct in failing and refusing to provide Peters with medical attention as aforesaid constitutes the violation of Peters' rights to be secure in his person pursuant to

-10-

U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

## I. The Defendants Unlawfully Commenced a Baseless Criminal Proceeding Against Peters

46. The defendants' conduct in commencing a baseless criminal proceeding as aforesaid constitutes the violation of Peters' rights to be free from the abuse of official power and process pursuant to U.S. Const. Amends. 4 and 14, § 1983, and the common law of the United States of America.

47. As a result of the defendants' deprivation of Peters and Smith's said federal constitutional, statutory, and common law rights, Peters and Smith have suffered and continue to suffer physical harm, emotional harm, psychological harm, and economic harm, humiliation, embarrassment, inconvenience, and other injuries.

### VI.

### STATEMENT OF NEW YORK STATE CLAIMS FOR RELIEF

48. Peters and Smith repeat and reallege each of the allegations set forth in paragraphs 1 through 47 of this complaint as if the same were fully set forth herein.

## A. The Defendants Unlawfully Pursued Peters

49. The defendants' conduct in pursing Peters to his apartment as aforesaid constitutes an unlawful and unreasonable pursuit in violation of Peters' rights to be secure in his person pursuant to New York State Constitution Article 1, Section 12 and

New York State common Law.

50. The defendants' conduct in pursing Peters to his apartment as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

51. The defendants' conduct in pursing Peters to his apartment as aforesaid constitutes the negligent infliction of emotional distress in violation of New York State common Law.

52. The defendants' conduct in pursing Peters to his apartment as aforesaid constitutes negligence in violation of New York State common Law.

53. The defendants' conduct in pursing Peters to his apartment as aforesaid constitutes a prima facie tort in violation of New York State common Law.

**B.   The Defendants Unlawfully Entered Peters and Smith's Home**

54. The defendants' conduct in entering Peters and Smith's home as aforesaid constitutes the violation of Peters and Smith's rights to be secure in their home pursuant to New York State Constitution Article 1, Section 12 and New York State common Law.

55. The defendants' conduct in entering Peters and Smith's home as aforesaid constitutes trespass in violation of New York State common Law.

56. The defendants' conduct in entering Peters and Smith's home as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

-12-

57.   The defendants' conduct in entering Peters and Smith's home as aforesaid constitutes the negligent infliction of emotional distress in violation of New York State common Law.

58.   The defendants' conduct in entering Peters and Smith's home as aforesaid constitutes negligence in violation of New York State common Law.

59.   The defendants' conduct in entering Peters and Smith's home as aforesaid constitutes a prima facie tort in violation of New York State common Law.

**C.   The Defendants Unlawfully Aimed their Guns at Peters and Smith**

60.   The defendants' conduct in aiming guns at Peters and Smith as aforesaid constitutes the violation of Peters and Smith's rights to be secure in their persons pursuant to New York State Constitution Article 1, Section 12 and New York State common Law.

61.   The defendants' conduct in aiming guns at Peters and Smith as aforesaid constitutes assault in violation of New York State common Law.

62.   The defendants' conduct in aiming guns at Peters and Smith as aforesaid constitutes false arrest in violation of New York State common Law.

63.   The defendants' conduct in aiming guns at Peters and Smith as aforesaid constitutes false imprisonment in violation of New York State common Law.

64.   The defendants' conduct in aiming guns at Peters and

Smith as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

65. The defendants' conduct in aiming guns at Peters and Smith as aforesaid constitutes the negligent infliction of emotional distress in violation of New York State common Law.

66. The defendants' conduct in aiming guns at Peters and Smith as aforesaid constitutes negligence in violation of New York State common Law.

67. The defendants' conduct in aiming guns at Peters and Smith as aforesaid constitutes a prima facie tort in violation of New York State common Law.

**D. The Defendants Unlawfully Battered Peters**

68. The defendants' conduct in violently striking Peters as aforesaid constitutes the violation of Peters' rights to be secure in his person pursuant to New York State Constitution Article 1, Section 12 and New York State common Law.

69. The defendants' conduct in violently striking Peters as aforesaid constitutes battery in violation of New York State common Law.

70. The defendants' conduct in violently striking Peters as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

71. The defendants' conduct in violently striking Peters as aforesaid constitutes the negligent infliction of emotional

distress in violation of New York State common Law.

72. The defendants' conduct in violently striking Peters as aforesaid constitutes negligence in violation of New York State common Law.

73. The defendants' conduct in violently striking Peters as aforesaid constitutes a prima facie tort in violation of New York State common Law.

**E. The Defendants Unlawfully Searched Peters and Smith's Home**

74. The defendants' conduct in touching and moving objects in Peters and Smith's home as aforesaid constitutes the violation of Peters and Smith's rights to be free from unreasonable searches pursuant to New York State Constitution Article 1, Section 12 and New York State common Law.

75. The defendants' conduct in touching and moving objects in Peters and Smith's home as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

76. The defendants' conduct in touching and moving objects in Peters and Smith's home as aforesaid constitutes the negligent infliction of emotional distress in violation of New York State common Law.

77. The defendants' conduct in touching and moving objects in Peters and Smith's home as aforesaid constitutes negligence in violation of New York State common Law.

78. The defendants' conduct in touching and moving objects in Peters and Smith's home as aforesaid constitutes a prima facie tort in violation of New York State common Law.

**F. The Defendants Unlawfully Removed Peters from His Home**

79. The defendants' conduct in removing Peters from his home as aforesaid constitutes the violation of Peters' rights to be free from unreasonable seizures pursuant to New York State Constitution Article 1, Section 12 and New York State common Law.

80. The defendants' conduct in removing Peters from his home as aforesaid constitutes false arrest in violation of New York State common Law.

81. The defendants' conduct in removing Peters from his home as aforesaid constitutes false imprisonment in violation of New York State common Law.

82. The defendants' conduct in removing Peters from his home as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

83. The defendants' conduct in removing Peters from his home as aforesaid constitutes the negligent infliction of emotional distress in violation of New York State common Law.

84. The defendants' conduct in removing Peters from his home as aforesaid constitutes negligence in violation of New York State common Law.

85. The defendants' conduct in removing Peters from his home

as aforesaid constitutes a prima facie tort in violation of New York State common Law.

**G.    The Defendants Unlawfully Strip-Searched Peters**

86.   The defendants' conduct in subjecting Peters to a strip-search as aforesaid constitutes the violation of Peters' rights to be free from unreasonable searches pursuant to New York State Constitution Article 1, Section 12 and New York State common Law.

87.   The defendants' conduct in subjecting Peters to a strip search as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

88.   The defendants' conduct in subjecting Peters to a strip search as aforesaid constitutes the negligent infliction of emotional distress in violation of New York State common Law in violation of New York State common Law.

89.   The defendants' conduct in subjecting Peters to a strip search as aforesaid constitutes negligence in violation of New York State common Law.

90.   The defendants' conduct in subjecting Peters to a strip search as aforesaid constitutes a prima facie tort in violation of New York State common Law.

**H.    The Defendants Unlawfully Failed to Provide Peters With Medical Attention**

91.   The defendants' conduct in failing and refusing to provide Peters with medical attention as aforesaid constitutes the violation of Peters' rights to be secure in his person pursuant to

-17-

New York State Constitution Article 1, Section 12 and New York State common Law.

92.  The defendants' conduct in failing and refusing to provide Peters with medical attention as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

93.  The defendants' conduct in failing and refusing to provide Peters with medical attention as aforesaid constitutes the negligent infliction of emotional distress in violation of New York State common Law.

94.  The defendants' conduct in failing and refusing to provide Peters with medical attention as aforesaid constitutes negligence in violation of New York State common Law.

95.  The defendants' conduct in failing and refusing to provide Peters with medical attention as aforesaid constitutes a prima facie tort in violation of New York State common Law.

I.  **The Defendants Unlawfully Commenced a Baseless Criminal Proceeding Against Peters**

96.  The defendants' conduct in commencing a baseless criminal proceeding against Peters as aforesaid constitutes malicious prosecution in violation of New York State common Law.

97.  The defendants' conduct in commencing a baseless criminal proceeding against Peters as aforesaid constitutes the abuse of process in violation of New York State common Law.

98.  The defendants' conduct in commencing a baseless criminal

-18-

proceeding against Peters as aforesaid constitutes the intentional infliction of emotional distress in violation of New York State common Law.

99. The defendants' conduct in commencing a baseless criminal proceeding against Peters as aforesaid constitutes the negligent infliction of emotional distress in violation of New York State common Law.

100. The defendants' conduct in commencing a baseless criminal proceeding against Peters as aforesaid constitutes negligence in violation of New York State common Law.

101. The defendants' conduct in commencing a baseless criminal proceeding against Peters as aforesaid constitutes a prima facie tort in violation of New York State common Law.

102. As a result of the defendants' deprivation of Peters and Smith's said New York State constitutional and common law rights, Peters and Smith have suffered and continue to suffer physical harm, emotional harm, psychological harm, and economic harm, humiliation, embarrassment, inconvenience, and other injuries.

## VII.

### STATEMENT OF LIABILITY OF THE MUNICIPAL DEFENDANTS

103. Peters and Smith repeat and reallege each of the allegations set forth in paragraphs 1 through 102 of this complaint as if the same were fully set forth herein.

104. All of the acts and/or omissions of the individual

-19-

defendants were conducted in furtherance of the business of the the municipal defendants City of New York and the NYPD and the said municipal defendants were exercising or could have exercised control, either directly or indirectly, over the individual defendants herein who are the agents, employees, and servants of the said municipal defendants.

105. The defendants City of New York and NYPD are liable for all actions of its employees, agents, and servants, as set forth above, under the doctrine of respondeat superior.

106. Peters duly served upon the municipal defendants a Notice of Claim and Demand for Adjustment of Damages within 90 days after the accrual of his claims pursuant New York State General Municipal Law § 50-e.

107. Although more than 30 days have elapsed since the service of said Notice of Claim and Demand for Adjustment, the defendants have failed to make any adjustment and/or payment of said claim.

108. Peters duly submitted to a hearing pursuant New York State General Municipal Law § 50-h on October 10, 2013.

## VIII.

### PRAYER FOR RELIEF

**WHEREFORE,** the plaintiffs demand judgment against the defendants as follows:

1. Declaratory judgment that the defendants violated the rights and privileges of the plaintiffs under the Constitution,

-20-

statutes, and common law of the United States of America and of the State of New York;

2.    Injunctive relief permanently restraining and enjoining the defendants from depriving the plaintiffs of their rights and privileges under the Constitution, statutes, and common law of the United States of America and of the State of New York;

3.    Judgment for compensatory damages in excess of ONE MILLION DOLLARS ($1,000,000.00) for the deprivation of the rights and privileges of the plaintiffs under the Constitution, statutes, and common law of the United States of America and of the State of New York;

4.    Judgment for punitive damages in excess of FIVE MILLION DOLLARS ($5,000,000.00) for the deprivation of the rights and privileges of the plaintiffs under the Constitution, statutes, and common law of the United States of America and of the State of New York;

5.    Court costs and reasonable attorneys' fees; and

6.    Such other, further, and different relief as this Court deems just, equitable, and proper.

**A JURY TRIAL IS HEREBY DEMANDED.**

Dated:    Hempstead, New York
          February 25, 2014

VALERIE A. HAWKINS, ESQ. (VH9780)
77 Saint Pauls Road North
Hempstead, New York 11550
(516) 292-0984
vahesq175@aol.com

-21-