| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

WILWOOD PETERS and SARITA SMITH,

                Plaintiffs,

– against –

THE CITY OF NEW YORK, et al.,

                Defendants.

**MEMORANDUM & ORDER**

14-cv-1361-ERK

KORMAN, *J.*:

    I assume familiarity with the background and underlying facts of this action pursuant to 42 U.S.C. § 1983 and the partial motion for summary judgment submitted by the defendants. I draw all reasonable inferences in favor of plaintiffs and grant in part and deny in part the motion for the reasons set forth below.

    1. Defendants have moved for summary judgment on plaintiffs' "unlawful pursuit" claim, on plaintiffs' unlawful entry and unlawful search claims as to defendants O'Keefe and Camacho, on plaintiffs' strip search claim as to defendant O'Keefe, as to all of plaintiffs' state law claims except malicious prosecution, and as to all claims on behalf of the NYPD as well as John and Jane Doe. Plaintiffs do not oppose defendants' motion as to those claims, and those claims are dismissed as abandoned. *Newton v. City of New York*, 738 F. Supp. 2d 397, 416 n.130 (S.D.N.Y. 2010) ("Newton did not respond to defendants' motion to dismiss his claim against the *City* for Ryan's wrongdoing in his Opposition Brief, and therefore abandoned his claim."); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."). Indeed, according to their brief,

plaintiffs only challenge the present motion as it seeks to dismiss claims for false arrest, malicious prosecution, and excessive force.

2. Defendants argue for dismissal of the false arrest claim on grounds that the discovery of marijuana on plaintiff Peters's coffee table provided probable cause to arrest him under NY Penal Law § 221.05, which does not require possession in public, nor does it require any specific quantity. Plaintiffs argue that the police did not discover marijuana on the coffee table until after arresting Peters, and that, in any event, the discovery of marijuana on the coffee table was insufficient to establish probable cause for the arrest because the police had no indication that Peters himself possessed the marijuana. This latter argument is based in large part on the premise that the police officers had no reason to believe that Peters was associated with the apartment in which the marijuana was found. Pls.' Mem. Opp'n Mot. Summ. J. at 8 ("At the time of his arrest, the defendants were not aware of any connection between Peters and his apartment.").

Nevertheless, Peters testified at his deposition that he walked down the steps from his apartment to check the mail at which time the police arrived in response to a complaint that people were smoking marijuana in the lobby. While it is unclear whether the police were in uniform, Peters concedes that he was aware that there were police in the building. Out of curiosity, Peters perched himself on the stairs near the lobby, where he observed police officers search two men that had been standing in the lobby. When the search revealed no contraband, Peters lost interest and walked back up the stairs to his apartment. Ex. A at 66-67. According to Peters, at least one police officer (defendant Sergeant Maloney) followed Peters from the lobby. Peters proceeded to enter his second floor apartment through an unlocked door that was apparently somewhat ajar such that Peters need only push to enter and need not turn the knob.

2

Ex. A at 69. Peters testified that Sergeant Maloney then attempted to follow Peters into his apartment and that Peters attempted to keep him, and other officers that eventually arrived, out "like, pushing back the door. And they kept pushing and pushing and put their hands inside the door." Ex. A at 73. This sequence of events provides a sufficient basis to believe that Peters was associated with the apartment in question (either as a permanent resident or an invited guest) especially considering that qualified immunity applies in this § 1983 action. *See generally Anderson v. Creighton*, 483 U.S. 635 (1987). The arrest was not improper once the marijuana was discovered on the coffee table inside Peters's apartment.

Plaintiffs' remaining argument is that, even assuming that an arrest subsequent to the discovery of marijuana on the coffee table was lawful, the arrest of Peters prior to that point lacked probable cause. The defendants argue that the arrest was lawful at all times because Peters was merely restrained prior to the discovery of marijuana on the coffee table and not formally arrested. Defs.' Reply Mem. at 4-5. Again, Peters claims that he was actually formally arrested prior to the discovery of marijuana on the coffee table. Pls.' Mem. Opp'n Summ. J. at 7; Ex. A at 80 ("Q: Okay. You think they didn't find that [marijuana] until after you had already been arrested? A: After."). Indeed, I observe that, in addition to the two marijuana possession charges, the police eventually charged Peters with "resisting arrest." Ex. E at 1. Yet the only resistance that occurred during this saga ended before the discovery of marijuana on the coffee table, providing support for the assertion that the police did in fact arrest Peters prior to the discovery. All of these circumstances create a triable issue as to whether the police arrested Peters before or after the discovery of marijuana on the coffee table. *See Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991) ("[w]hether a seizure is an arrest or a merely an investigatory detention" is a question of fact to be determined "under the totality of the circumstances."); *see*

*also Anthony v. City of New York*, No. 12-cv-4662, 2015 WL 3797233, at *2 (E.D.N.Y. June 18, 2015).

As an alternative argument, defendants maintain that the discovery of marijuana on the coffee table occurred only "a few seconds" after making the formal arrest, thus constituting only a momentary false arrest that would not add to damages at trial. There is some force to this argument. Nevertheless, defendants do not argue that a momentary false arrest cannot be unlawful despite its brevity. Moreover, the issue is inextricable intertwined with the issue of whether there was probable cause for Sergeant Maloney's entry and search of the apartment as to which the defendants concede there is a triable issue of fact. Under these circumstances, there is little to be gained in dismissing the false arrest claim at this stage because the factual circumstances surrounding the arrest will be explored at trial regardless. *See Audi Vision Inc. v. RCA Mfg. Co.,* 136 F.2d 621, 625 (2d Cir. 1943) ("[T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue."). The jury should be free to consider this issue in its determination of the totality of evidence and the motion to dismiss the cause of action for false arrest is denied.

3. The plaintiffs' cause of action for malicious prosecution has evoked a twofold response from the defendants. The plaintiffs argue that, even if the complaint filed against Peters was sufficient on its face to establish probable cause for the charge, the defendants are not entitled to summary judgment because there is a triable issue as to whether the affidavit was based on false evidence provided to the prosecutor. I agree. *See Clarke v. City of New York*, No. 98-cv-7297, 1999 WL 608857, at *9-10 (E.D.N.Y. July 22, 1999). Nevertheless, the claim for malicious

prosecution fails because the charges against Peters were dismissed as a result of the suppression of the evidence found on Peters's person and in his apartment. Ex. 10 at 3-6. In *Gonzalez v. City of Schenectady*, 728 F.3d 149, 162 (2d Cir. 2013), a criminal prosecution against the defendant was dismissed after the Appellate Division held that the evidence of the defendant's possession of cocaine was obtained as the product of an unlawful search and should have been suppressed. The defendant's subsequent cause of action for malicious prosecution was dismissed because the evidence that was illegally seized showed that he was guilty of the crime for which he was charged. Quoting from *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997), the Second Circuit in *Gonzalez* held, "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused." *Gonzalez*, 728 F.3d at 162.

*Gonzalez* requires dismissal of the malicious prosecution claim in the present action because the circumstances of the dismissal in Peters's prior criminal proceeding do not indicate his innocence and are, in fact, consistent with his guilt. The plaintiffs disagree with this reasoning, arguing that Peters should not be forced to choose between winning dismissal of his criminal prosecution on evidentiary grounds and preserving his malicious prosecution claim. Yet the case that the plaintiffs rely on for this assertion, *Murphy*, turned on its own particular facts—specifically, the state's failure to prosecute in the prior criminal proceeding. The *Murphy* court reasoned that the failure to prosecute should be presumed to indicate the state's inability to make out a meritorious case against the defendant. Indeed, it was based on this presumption not applicable here that the Second Circuit decided *Murphy*. There is no indication in the present case that the state's allegations against Peters were meritless, nor does the present case involve a failure to prosecute. The malicious prosecution claim is dismissed.

4. Defendants move for summary judgment on the cause of action for "unlawful aiming of firearms." They primarily argue that use of firearms was objectively reasonable because the police here entered a "dwelling and [did] not know who [was] inside or whether the occupants [were] armed." Defs.' Mem. Supp. Mot. Summ. J. at 8. Defendants cite only two cases on this issue, both of which stand for the proposition that it is not objectively unreasonable for police to draw their weapons when executing a valid search warrant in a private residence. *Id.* Both parties fail to observe that this rule is inapposite here where defendants have conceded that there are triable issues as to whether Sergeant Maloney unlawfully entered Peters's apartment. Indeed, if Maloney unlawfully entered, the cited rule would have little relevance. Nevertheless, I agree with the contention made by defendants that "unlawful aiming of firearms" is not a standalone cause of action, and I conclude that the issue is better addressed within the cause of action for excessive force. Indeed, the brief submitted by the plaintiffs actually refers to their "unlawful aiming of firearms" claim as an "excessive force" claim. *See* Pls.' Mem. Opp'n Mot. Summ. J. at 1; *Green v. City of Mt. Vernon*, No. 10-cv-707, 2015 WL 1455701, at *20 (S.D.N.Y. March 31, 2015) (analyzing as an excessive force claim allegations that police unlawful drew their firearms when entering residence). I therefore dismiss the claim for "unlawful aiming" with the understanding that the question will be addressed at trial in connection with excessive force.

5. Defendants concede that there are genuine issues of material fact which preclude summary judgment on plaintiffs' federal claims for unlawful entry and search of the apartment as against Sergeant Maloney, plaintiff Peters's excessive force claim, plaintiff Peters's strip search claim as against Officer Camacho, and plaintiff Peters's denial of medical treatment claim. They therefore do not seek summary judgement on those federal claims.

**SO ORDERED.**

Brooklyn, New York
June 30, 2015

_____

Edward R. Korman
Senior United States District Judge